**Exhibit 1**

**FREEDOM OF INFORMATION ACT REQUEST**

**TO:** U.S. Department of Agriculture
Office of Information and Privacy
1400 Independence Avenue, SW
Washington, DC 20250
Email: foia@usda.gov

**Cc:** USDA Food Safety and Inspection Service
FOIA Officer
1400 Independence Avenue, SW
Room 2160 South Building
Washington, DC 20250-3700
Email: fsis.foia@usda.gov

**FROM:** Lesley Pacey
Senior Environmental Officer
Government Accountability Project
1612 K Street NW, Suite 1100
Washington, DC 20006

Email: lesleyp@whistleblower.org

**DATE:** May 28, 2025

**RE:** Emergency FOIA Request for East Palestine Train Derailment Agricultural Testing Records - Request for Expedited Processing and Fee Waiver

---

**INTRODUCTION**

Government Accountability Project (GAP) hereby submits this Freedom of Information Act (FOIA) request to the U.S. Department of Agriculture (USDA) pursuant to 5 U.S.C. § 552. This request seeks records concerning USDA's response to potential agricultural contamination following the February 3, 2023, Norfolk Southern train derailment and subsequent illegal open burn of vinyl chloride tank cars in East Palestine, Ohio.

This request is specifically directed to the USDA Food Safety and Inspection Service (FSIS). However, if USDA and/or FSIS determines any records are held by other USDA agencies, such as the Animal Plant Health Inspection Service (APHIS), that all efforts are made to coordinate to ensure a comprehensive response and transfer of appropriate portions of the request.

**BACKGROUND**

On February 3, 2023, a Norfolk Southern train carrying hazardous materials derailed in East Palestine, Ohio, near the Pennsylvania border. Following the derailment, on February 6, 2023, Norfolk Southern conducted an illegal open burn of five vinyl chloride tank cars, releasing over 100 highly toxic chemicals into the environment, including dioxins, polycyclic aromatic hydrocarbons (PAHs), phosgene, and hydrogen chloride.

Independent testing conducted by GAP whistleblower Scott Smith has revealed alarming levels of dioxin contamination in residential garden produce, with dioxin Toxic Equivalents (TEQs) as high as 440 parts per trillion (ppt) found in garlic samples—more than 12 times higher than Ohio's soil cleanup remediation level of 35.8 ppt. Smith's testing found dioxin contamination in 100% of sampled garden vegetables grown in East Palestine.

Despite these findings, neither the EPA nor any other federal agency has conducted comprehensive testing of agricultural products in the affected region. The EPA has relied solely on limited testing by the Ohio Department of Agriculture and Ohio State University, which focused on agricultural areas up to five miles from the derailment site—predominantly upwind from the toxic plume—and did not test for dioxins or other products of incomplete combustion.

**SIGNIFICANCE OF AGRICULTURAL IMPACT**

The East Palestine derailment occurred in a region with significant agricultural production. Ohio ranks among the top states nationally for:

- Corn production (contributing billions to the economy)
- Soybean production
- Dairy farming (with thousands of dairy operations)
- Poultry and egg production
- Pork production

Pennsylvania similarly maintains substantial agricultural operations, including:

- Dairy farming (leading milk-producing state in the Northeast)
- Mushroom production (leading national producer)
- Poultry and livestock operations
- Vegetable and fruit production

The toxic plume from the East Palestine incident extended across state lines, potentially impacting agricultural operations across both Ohio and Pennsylvania. Dioxins and PAHs are persistent bioaccumulative toxins that enter the food chain through soil uptake by plants and atmospheric deposition on crops. These chemicals pose serious health risks including cancer, birth defects, and multigenerational impacts.

**REQUESTED RECORDS**

GAP requests all records in USDA's possession, custody, or control from February 3, 2023, to present, including but not limited to:

**A. TESTING RECORDS AND DATA**

1. All records concerning any testing conducted by USDA of agricultural products, soil, water, air, or livestock in Ohio, Pennsylvania, or any other state following the East Palestine train derailment
2. All test results, laboratory reports, analytical data, and quality assurance/quality control documentation related to such testing
3. All records identifying:
   - What was tested (specific crops, soil samples, water sources, livestock, etc.)
   - Where testing was conducted (specific locations, farms, facilities)
   - When testing was conducted (dates of sample collection and analysis)
   - What contaminants were tested for (including but not limited to dioxins, PAHs, vinyl chloride, hydrogen chloride, phosgene, and other train derailment chemicals)
   - Detection limits and methodology used
   - Results and concentrations found

**B. COMMUNICATIONS AND COORDINATION**

4. All communications (emails, text messages, memoranda, letters, phone logs, meeting notes) between USDA officials and:
   - Environmental Protection Agency officials
   - Ohio Department of Agriculture officials
   - Pennsylvania Department of Agriculture officials
   - Ohio State University researchers
   - Norfolk Southern Corporation or its contractors
   - Any other federal, state, or local agencies regarding East Palestine-related agricultural concerns
5. All communications between USDA officials and agricultural organizations including but not limited to:
   - American Farm Bureau Federation
   - National Farmers Union
   - Ohio Farm Bureau Federation
   - Pennsylvania Farm Bureau
   - National Cattlemen's Beef Association
   - National Pork Producers Council
   - United Egg Producers
   - American Dairy Association
   - Any other farming, livestock, or agricultural trade organizations

## C. DECISION-MAKING RECORDS

6. All records concerning decisions whether to conduct agricultural testing in response to the East Palestine incident
7. All records concerning decisions whether to issue warnings, advisories, or recommendations to farmers, agricultural producers, or consumers regarding potential contamination
8. All risk assessments, scientific analyses, or evaluations of potential agricultural impacts from the East Palestine incident
9. All records concerning coordination with other agencies regarding agricultural monitoring or testing responsibilities

## D. PUBLIC COMMUNICATIONS

10. All records concerning public statements, press releases, advisories, or communications to farmers, consumers, or the media regarding agricultural safety following the East Palestine incident
11. All records concerning responses to media inquiries about agricultural testing or safety
12. All records concerning communications with Congress, state legislators, or other elected officials regarding agricultural impacts

## E. INTERNAL DELIBERATIONS

13. All internal USDA analyses, assessments, or discussions concerning the need for agricultural testing or monitoring following the East Palestine incident
14. All records concerning USDA's role or responsibilities in responding to the agricultural impacts of the East Palestine incident
15. All meeting minutes, briefing materials, presentations, or reports related to East Palestine agricultural concerns

## F. REGULATORY AND ENFORCEMENT ACTIONS

16. All records concerning any enforcement actions, violations, or regulatory responses related to agricultural contamination from the East Palestine incident
17. All records concerning any Food Safety and Inspection Service (FSIS) actions or considerations related to East Palestine contamination

## REQUEST FOR EXPEDITED PROCESSING

GAP requests expedited processing of this FOIA request pursuant to 5 U.S.C. § 552(a)(6)(E) and 7 C.F.R. § 1.12(e). This request meets the criteria for expedited processing because:

1. **Compelling Need for Information:** There is an urgent need to inform the public about potential health risks from contaminated agricultural products entering the food supply.

Independent testing has revealed dangerous levels of dioxin contamination in produce from the East Palestine area, yet no comprehensive federal agricultural testing has been conducted.

2. **Matter of Widespread and Exceptional Media Interest:** The East Palestine derailment has generated extensive national media coverage and public concern about food safety and agricultural contamination. The public has a compelling interest in knowing what, if any, testing USDA has conducted to protect the food supply.

3. **Questions About Government Activity:** Significant questions exist about USDA's response to potential agricultural contamination from this major environmental disaster, including whether the agency has fulfilled its food safety responsibilities.

4. **Urgency to Inform Public:** With agricultural products potentially contaminated with cancer-causing chemicals entering the food supply, there is an urgent need to inform the public about any testing conducted and results obtained.

**REQUEST FOR FEE WAIVER**

GAP requests a complete waiver of all fees associated with this request pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 7 C.F.R. § 1.12(l). This request satisfies all requirements for a fee waiver:

**A. PUBLIC INTEREST STANDARD**

1. **Subject Concerns Identifiable Operations or Activities of Government:** This request seeks information about USDA's response to agricultural contamination from a major environmental disaster, directly concerning government operations and regulatory responsibilities.

2. **Disclosure is Likely to Contribute Significantly to Public Understanding:** The requested records will inform the public about:
   - Whether USDA conducted testing to protect the food supply following a major chemical disaster
   - What contaminants were tested for and what levels were found
   - Whether appropriate warnings were issued to farmers and consumers
   - How federal agencies coordinated their response to potential agricultural contamination

3. **Disclosure Will Contribute to Understanding of Government Operations:** The records will reveal how USDA exercises its food safety responsibilities during environmental emergencies and whether the agency adequately protects public health.

**B. REQUESTER QUALIFICATIONS**

GAP is a nonprofit public interest organization founded in 1977 and dedicated to protecting the public interest by promoting government and corporate accountability. GAP qualifies for a fee waiver as both a public interest organization and a media entity:

1. **Public Interest Organization:** GAP has a demonstrated history of disseminating information to the public about government activities, particularly regarding environmental and food safety issues.
2. **Media Entity:** GAP regularly publishes reports, maintains a website, issues press releases, and provides information to journalists and the media about government accountability issues.

## C. NOT FOR COMMERCIAL INTEREST

GAP is not seeking this information for commercial purposes. GAP is a 501(c)(3) nonprofit organization whose mission is to protect the public interest through transparency and accountability.

## REQUEST FOR ELECTRONIC PRODUCTION

GAP requests that responsive records be provided in electronic format when possible, preferably as searchable PDF files or in their native electronic format.

## SCOPE AND CLARIFICATION

This request should be interpreted broadly to include all records responsive to the described categories. If any portion of this request is unclear, please contact the undersigned for clarification rather than denying the request.

## CONCLUSION

The East Palestine derailment represents one of the most significant environmental disasters in recent U.S. history, with potential impacts on agricultural production and food safety affecting millions of Americans. The public has a right to know whether USDA conducted appropriate testing to protect the food supply and what, if any, contamination has been found in agricultural products.

Independent testing has already revealed dangerous levels of dioxin contamination in produce from the affected area, yet no comprehensive federal agricultural testing appears to have been conducted. Given the serious public health implications and the urgent need for transparency, GAP respectfully requests that USDA process this request expeditiously and provide all responsive records.

Please acknowledge receipt of this request and provide an estimated date for completion. If you have any questions or need clarification, please contact me at                    or lesleyp@whistleblower.org.

Thank you for your attention to this important matter.

**Respectfully submitted,**

Lesley Pacey

Senior Environmental Officer
Government Accountability Project
1612 K Street NW, Suite 1100
Washington, DC 20006

Email: [email address]

**Exhibit 2**

![USDA logo] **United States Department of Agriculture**

June 09, 2025

Mrs.LesleyPacey
Government Accountability Project
1612 K. St. NW, Suite 1100
WashingtonDC20006

SUBJECT:   Request 2025-FPAC-BC-07351-F - Pacey - Final Response

Dear Mrs. Pacey

This responds to your Freedom of Information Act (FOIA) request dated May 28, 2025 and assigned control number 2025-FPAC-BC-07351-F.

In response to your request, we compiled and are releasing 12 pages. With respect to these pages, we are releasing 10 pages in full, 2 pages redacted in part and 69 pages are being withheld in full, pursuant to 5 U.S.C. § 552 exemptions (b)(5), Deliberative Process Privilege, and (b)(6) of the FOIA.

**Exemption 5** protects privileged interagency or intra-agency memoranda or letters, as follows: Pursuant to exemption 5, 69 pages have been withheld in full and 2 pages in part.

Specifically, exemption 5 allows FPAC/NRCS/FSA to withhold, "inter-agency or intra-agency memorandums or letters which would not be available by law to a party... in litigation with an agency". As such, the privilege "exempts those documents... normally privileged in the civil discovery context". National Labor Relations Bd. v. Sears Roebuck & Co., 421 U.S. 132 (1975). Exemption 5 incorporates several of these privileges from discovery in litigation, including the deliberative process privilege, the attorney work-product privilege, the attorney-client privilege, and the Government commercial information privilege.

• Deliberative Process Privilege
The Deliberative Process Privilege protects the decision-making process of Government agencies and encourages the frank discussion of legal and policy issues by ensuring that agencies are not forced to operate in a fish bowl. The deliberative process privilege protects materials that are both pre-decisional and deliberative. A pre-decisional document is a document prepared to assist an FSA decision-maker in arriving at his/her decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the personal opinions of the writer rather than FPAC/NRCS/FSA policy. The records withheld under this privilege include 13 pages of Field Notes generated by FSA and a 56 page assessment/report generated by NRCS for internal use only.

**Exemption 6** protects personal information affecting an individual's privacy.
Pursuant to exemption 6, 2 pages have been withheld in part.



**United States Department of Agriculture**

Specifically, exemption 6 protects personnel, medical, and similar files, the disclosing which would constitute a clearly unwarranted invasion of personal privacy. The courts have held that the phrase "similar files" involves all information that applies to a particular person. When disclosing information about particular individuals is requested, the courts have decided that it is necessary for FPAC/NRCS/FSA to determine whether release of the information would constitute a clearly "unwarranted" invasion of the individuals' privacy. To make this determination, FPAC/NRCS/FSA is required to perform a "balancing test". This means that FPAC/NRCS/FSA must weigh the individual's right to privacy against the public's right to disclosure. In this instance, FPAC/NRCS/FSA has determined that disclosing this information would shed little or no light on the performance of FPAC/NRCS/FSA's statutory duties and that, on balance; the public interest to be served by its disclosure does not outweigh the privacy interest of the individuals in question, in withholding it. The records withheld under this exemption include personal email addresses and/or personal cell phone numbers.

If you believe our decision to withhold this information is incorrect, you may appeal to the FPAC-BC Appeals and Litigation Division (ALD). The Appeals and Litigation Staff must receive your written appeal within ninety (90) calendar days of the date of this letter. Please include in the appeal the location of the responsive records, if it is known to you, and the reason why you believe that there are records responsive to your request in FPAC/NRCS/FSA files. Be sure to include a copy of your initial request letter in your appeal package. You may submit your appeal electronically to FSAFOIAappeal@wdc.usda.gov or by mail. If mailing the appeal, clearly mark both your letter and its envelope with the words "Freedom of Information Act Appeal."

Mail your appeal
package to the following address.

FARM PRODUCTION AND CONSERVATION BUSINESS CENTER
ATTN: APPEALS AND LITIGATION STAFF
1400 INDEPENDENCE AVE SW RM 5971-S
WASHINGTON DC 20250-0570.
PHONE: (202) 690-3297

You may seek dispute resolution services from the FOIA liaison. Contact information for the FOIA liaison is:

FPAC – BC PUBLIC AFFAIRS LIAISON
EMAIL: SM.FP.FOIA@USDA.GOV

You may contact the Office of Government Information Services at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. Contact

USDA is an equal opportunity provider, employer, and lender.



**United States
Department of
Agriculture**

Sincerely,

Patrick McLoughlin
Patrick McLoughlin
FOIA Officer
Farm Production and Conservation

cc:
Responsive Records

# Exhibit 3

**Re: Appeal of Incomplete Response – FOIA Request No. 2025-FPAC-BC-07351-F**

**To:**
FOIA Appeals Officer
U.S. Department of Agriculture
Email: **FSAFOIAappeal@wdc.usda.gov**

**From:**
Lesley Pacey
Senior Environmental Officer
Government Accountability Project
1612 K Street NW, Suite 1100
Washington, DC 20006
lesleyp@whistleblower.org

**Date:** June 18, 2025

**Subject:** FOIA Appeal: USDA Failure to Provide Full Records Related to February 15, 2023 East Palestine Roundtable

---

Dear FOIA Appeals Officer,

I am writing to formally appeal the response issued by the USDA regarding FOIA Request No. **2025-FPAC-BC-07351-F**, submitted by the Government Accountability Project on May 28, 2025. While USDA's limited production included several planning documents and summary materials, it notably fails to include critical responsive records, including the complete transcript or recording of the **February 15, 2023 roundtable held at the Ohio Statehouse**.

This appeal specifically challenges the withholding of additional materials, including records that may have been excluded based on FOIA Exemptions **(b)(5)** (Deliberative Process Privilege) and **(b)(6)** (Personal Privacy), which were invoked in the USDA's final response. **Notably, records withheld under this privilege include 13 pages of Field Notes generated by the USDA's Farm Service Agency (FSA) and a 56-page assessment report generated by Natural Resources Conservation Service (NRCS) for internal use only.**

### _Public Right to Know is Imperative_

The Government Accountability Project submits this appeal amid a worsening public health crisis in and around East Palestine, Ohio—where residents continue to report severe and unexplained symptoms as well as new cancers following the February 2023 train derailment and toxic chemical release. Recent revelations obtained through FOIA underscore the urgent need for transparency: internal records now confirm that multiple federal agencies, including the White House and National Security Council, were aware that long-term cancer clusters were likely to develop in the affected population and that at least 20 years of medical monitoring would be necessary. Yet, this information was knowingly withheld from

the public. In light of this apparent health coverup and the federal government's failure to warn or protect impacted communities, the public's right to know is not just compelling—it is imperative. Full disclosure of USDA's actions, discussions, and risk assessments is critical to holding agencies accountable and to restoring public trust in the wake of institutional negligence.

Furthermore, it is important to note that the scope of this disaster extends far beyond initial assessments. Research published in Environmental Research Letters reveals that the toxic plume spread contamination across more than 540,000 square miles, affecting at least 16 states from New England to North Carolina. Independent analysis found:

- **Unprecedented pH alterations** in precipitation across the Midwest and Northeast

- **Chloride concentrations at 99th percentile** levels for the last decade

- **Contamination reaching Canada's border** with particularly high concentrations in areas downwind of the crash site

### *Dangerous Dioxin Contamination Already Found in Soil and Food*

Norfolk Southern contractor Arcadis, which diluted its dioxin soil samples by mixing surface samples with samples collected six inches beneath the surface, found 2,3,7,8 TCDD dioxin, the most dangerous dioxin congener, at an average of 607 parts per trillion, which is more than 126 times above the EPA's 4.8 ppt Regional Screening Level (RSL) health benchmark for dioxin, at near homes in Western, Pennsylvania.[1] [2]

Additionally, independent testing by GAP whistleblower Scott Smith has revealed alarming contamination levels that federal agencies have failed to address:

- **440 parts per trillion (ppt) dioxin TEQs** found in garlic samples from East Palestine gardens— **more than 12 times higher** than Ohio's soil cleanup remediation level of 35.8 ppt

- **100% contamination rate** in sampled garden vegetables

- **Dioxin contamination in over 40%** of soil, water, and air filter samples

Despite these findings showing contamination levels exceeding state remediation standards by more than 1,200%, it appears no comprehensive federal agricultural testing has been conducted by USDA or any other agency.

### *Massive Agricultural Exposure in the Region*

---

[1] "TCDD Intermedia Transfer Factors." Government Accountability Project, 2025. https://whistleblower.org/wp-content/uploads/2025/04/tcdd-INTERMEDIA-TRANSFER-FACTORS.pdf.

[2] Environmental Protection Agency. "Summary of Phase 1 Dioxin Results for the East Palestine Derailment Incident." September 14, 2023. https://www.epa.gov/system/files/documents/2023-10/phase-1-soil-sampling-technical-memo-20230914pdf.pdf

The locally impacted residents as well as the general public have a right to know what the USDA has done to protect their food source. The affected region represents one of America's most significant agricultural production areas:

**Ohio Agricultural Operations:**

- 2,700 dairy farms producing milk for national distribution

- 27.5 million egg-laying hens

- Major operations by Tyson Foods and other national suppliers

- Leading soybean and corn production shipped nationwide

**Pennsylvania Agricultural Operations:**

- 6,570 dairy farms (8th largest milk producer nationally)

- Leading national mushroom producer

- Thousands of poultry farms

- Major operations by Perdue Farms and other national distributors

**National Food Supply Chain Impact:** Major food processors operating in the affected region include companies that supply ingredients nationwide—Cargill, ConAgra, Kellogg's, General Mills, Kraft, Hershey's, and others. Contaminated agricultural products from this region are likely already in the national food supply, given normal harvest and distribution cycles.

---

### *Grounds for Appeal*

We request immediate reconsideration and release of the following responsive materials that were omitted or potentially withheld:

1. **Complete Transcript or Recording** of the February 15, 2023 roundtable held in Room 230 of the Ohio Senate Building. The USDA production includes only a list of pre-scripted questions—not the actual dialogue, responses, or discussion.

2. **Related Records**, including but not limited to:

   o Audio or video recordings of the meeting

   o USDA internal or interagency meeting notes or summaries

   o Emails sent or received by USDA attendees (e.g., John Patterson, Glenda Ward, Blake Arthur) or other participants regarding the roundtable

   o Follow-up communications with Ohio state officials, the American Cancer Society, and the Ohio Environmental Council

- o Documents and correspondence concerning the **Emergency Animal Mortality Management program** discussed during the meeting

- o Any written remarks or summaries reflecting concerns about **cancer risks, environmental exposure, agricultural testing, or animal deaths**

---

**Relevance to Original Request**

The requested materials fall squarely within the scope of our FOIA request, which explicitly sought:

- "All communications... between USDA officials and... state legislators... and other federal, state, or local agencies regarding East Palestine-related agricultural concerns" (**Section B.4**)

- "All meeting minutes, briefing materials, presentations, or reports related to East Palestine agricultural concerns" (**Section E.15**)

- "All records identifying... what was tested... and what contaminants were tested for" (**Section A.3**)

This roundtable was a key convening of public health officials, state legislators, USDA officials, and public interest groups to discuss pressing environmental health threats following a major chemical disaster. The public has a right to review any transcript, recording, or internal notes regarding what was discussed, what recommendations were made, or how USDA addressed agricultural, livestock, and food safety concerns.

---

**Objection to Exemption Claims**

The USDA cited FOIA Exemptions **(b)(5)** and **(b)(6)** in its final response. However, these exemptions are not valid bases for withholding the requested materials under the circumstances.

**1. Exemption (b)(5): Deliberative Process Privilege**

The deliberative process exemption is intended to protect predecisional agency recommendations, not factual records of interagency meetings or external policy discussions. **The February 15, 2023 roundtable was a public-facing event with external stakeholders, not an internal deliberative session.** Furthermore:

- The scripted **questions** were provided to external parties (e.g., American Cancer Society, Ohio Environmental Council) and therefore lose protection under (b)(5).

- Any **recordings**, **transcripts**, or **summaries** of what USDA officials *actually said* at this meeting represent factual observations, not predecisional opinions.

- **Courts have consistently held that factual materials or communications shared outside the agency are not protected under (b)(5) (see _Judicial Watch, Inc. v. U.S. Department of Homeland Security_, 926 F. Supp. 2d 121 (D.D.C. 2013)).**

**2. Exemption (b)(6): Personal Privacy**

We respectfully submit that redactions for privacy under (b)(6) are not a legitimate basis to withhold entire documents. The public interest in this case—centering on food safety, environmental contamination, and cancer risk—far outweighs any minimal privacy interest of government employees participating in their official capacity. Redaction of contact information is acceptable, but names and roles of public employees in policymaking and disaster response must be disclosed.

---

**Public Health and Public Interest Override**

Even assuming arguendo that any claimed exemption technically applies, the **public's right to know in matters of public health, food safety, and government response to environmental contamination overrides any discretionary application of these exemptions**.

The East Palestine disaster involves:

- Known exposure to **dioxins**, **phosgene**, and **vinyl chloride**, all of which pose substantial cancer and reproductive risks.

- Documented reports of **livestock deaths**, **agricultural disruption**, and **contaminated soil and water**

- A **federally attended roundtable** to coordinate response, communication, and risk assessment

With potentially contaminated produce and animal products entering the food chain, it is imperative that the public understands what USDA did or did not do in response. Disclosure of these records is essential for **accountability, prevention of future harm, and protection of consumer and farmer interests**.

---

**Remedy Requested**

We respectfully request:

- Immediate production of any **audio or video recordings** and/or **verbatim transcript** of the February 15, 2023 roundtable;

- Any associated **emails, notes, or follow-up documents** related to USDA's participation;

- All 13 unredacted pages of Field Notes generated by the USDA's Farm Service Agency (FSA) and the unredacted 56-page assessment report generated by Natural Resources Conservation Service (NRCS).

- Any **documents concerning the Emergency Animal Mortality Management program** discussed at the meeting, including communications about outreach, eligibility, or implementation.

If the USDA maintains its position that exemptions apply, we request a detailed **Vaughn index** explaining the justification for each withheld document or portion thereof.

---

Thank you for your attention to this important matter. Please confirm receipt of this appeal and provide an estimated date for response. I am available at                or lesleyp@whistleblower.org to discuss this request.

Sincerely,
**Lesley Pacey**
Senior Environmental Officer
Government Accountability Project

# Exhibit 4

**Subject:** Re: [External Email]USDA FOIA APPEAL
**From:** Lesley Pacey <LesleyP@whistleblower.org>
**Date:** 6/23/2025, 6:08 PM
**To:** SM.FSA.ALS.FOIAappeal <FSAFOIAappeal@usda.gov>
**CC:** "Gonzalez, Jose - FPAC-FBC, DC" <jose.gonzalez@usda.gov>, Tom Devine
<TomD@whistleblower.org>, Lesley Pacey <LesleyP@whistleblower.org>

Thank you, Mr., Gonzalez.

I look forward to hearing from you.

Best Regards,
Lesley Pacey
Senior Environmental Officer
Government Accountability Project

1612 K St NW, Suite 808
Washington, DC 20006

Email: LesleyP@whistleblower.org
Website: www.whistleblower.org
*Government Accountability Project is the nation's leading whistleblower protection organization. Through litigating*
*whistleblower cases, publicizing concerns and developing legal reforms, Government Accountability Project's mission*
*is to protect the public interest by promoting government and corporate accountability. Founded in 1977, Government*
*Accountability Project is a non-profit, non-partisan advocacy organization located in Washington DC.*
**NOTICE:**  This communication may be unlawfully collected and stored by the National Security Agency (NSA) in secret.
The parties to this email do not consent to the retrieving or storing of this communication and any related metadata, as
well as printing, copying, re-transmitting, disseminating, or otherwise using it. This communication may contain
privileged or other confidential information. If you believe you have received this communication in error, please delete
it immediately and do not print, copy, retransmit, disseminate, or otherwise use this information. Also, please indicate to
the sender that you have received this communication in error.

---

**From:** SM.FSA.ALS.FOIAappeal <FSAFOIAappeal@usda.gov>
**Sent:** Monday, June 23, 2025 11:39 AM
**To:** Lesley Pacey <LesleyP@whistleblower.org>
**Cc:** Gonzalez, Jose - FPAC-FBC, DC <jose.gonzalez@usda.gov>
**Subject:** RE: [External Email]USDA FOIA APPEAL

Greetings,

I have been assigned to process your recently filed FOIA appeal.  Please see the attached for an interim
acknowledgement response.  If you have any questions, please reach out to me directly at sandra.becker@usda.gov.

Sincerely,

**Sandra Becker**
Program Specialist
Appeals and Litigation Division
Farm Production And Conservation Business Center
United States Department of Agriculture
Email: sandra.becker@usda.gov

---

**From:** Lesley Pacey <LesleyP@whistleblower.org>
**Sent:** Wednesday, June 18, 2025 11:43 AM
**To:** SM.FSA.ALS.FOIAappeal <FSAFOIAappeal@usda.gov>
**Cc:** Tom Devine <TomD@whistleblower.org>; Andrea Meza <AndreaM@whistleblower.org>; McLoughlin, Patrick - FPAC-FBC, MN <patrick.mcloughlin@usda.gov>; Lesley Pacey <LesleyP@whistleblower.org>
**Subject:** [External Email]USDA FOIA APPEAL

You don't often get email from lesleyp@whistleblower.org. Learn why this is important

[External Email]
If this message comes from an **unexpected sender** or references a **vague/unexpected topic;**
Use caution before clicking links or opening attachments.
Please send any concerns or suspicious messages to: Spam.Abuse@usda.gov

To Whom it May Concern,

Please see the attached USDA Appeal for FOIA Request FPAC-BC-07351-F, which was closed on 6-9-2025. Along with our appeal letter, I have attached:

- the original FOIA request;

- the limited FOIA production documents;

- and the USDA FOIA Response Letter.

Thank you for your prompt attention to this matter. Please let me know if you have any questions.

Best Regards,
Lesley Pacey
Senior Environmental Officer
Government Accountability Project

1612 K St NW, Suite 808
Washington, DC 20006

Email: LesleyP@whistleblower.org
Website: www.whistleblower.org
*Government Accountability Project is the nation's leading whistleblower protection organization. Through litigating whistleblower cases, publicizing concerns and developing legal reforms, Government Accountability Project's mission is to protect the public interest by promoting government and corporate accountability. Founded in 1977, Government*

*Accountability Project is a non-profit, non-partisan advocacy organization located in Washington DC.*
**NOTICE:**  This communication may be unlawfully collected and stored by the National Security Agency (NSA) in secret. The parties to this email do not consent to the retrieving or storing of this communication and any related metadata, as well as printing, copying, re-transmitting, disseminating, or otherwise using it. This communication may contain privileged or other confidential information. If you believe you have received this communication in error, please delete it immediately and do not print, copy, retransmit, disseminate, or otherwise use this information. Also, please indicate to the sender that you have received this communication in error.

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

**USDA** **Farm Production and Conservation**
U.S. DEPARTMENT OF AGRICULTURE

**Exhibit 5**

Business Center
Appeals and Litigation Division
1400 Independence Ave., SW
Stop 0570
Washington, DC 20250-0501

*VIA ELECTRONIC MAIL*

July 23, 2024

Lesley Pacey
Senior Environmental Officer
Government Accountability Project
1612 K Street NW, Suite 1100
Washington, DC 20006
lesleyp@whistleblower.org

RE:    Freedom of Information Act (FOIA) Appeal – Log 25-18
       FOIAXpress Appeal Number 2025-FPAC-NRCS-00069-A

Dear Ms. Pacey:

The Farm Production and Conservation's (FPAC) Appeals and Litigation Division (ALD) is remanding your June 18, 2025, FOIA appeal to the FPAC's FOIA Office for further review.  Your appeal pertained to the FOIA Office's response to your FOIA request 2025-NRCS-BC-07351-F.

On May 28, 2025, you requested testing records and data, communications and coordination, decision-making records, public communications, internal deliberations, and regulatory and enforcement actions related to the February 3, 2023, Norfolk Southern train derailment in East Palestine, Ohio.

On June 9, 2025, you received a final response from the FOIA Office that released 12 pages, with 10 of those pages released in full, 2 pages released with redactions, and 69 pages withheld in full.  The FOIA Office withheld the redacted information in accordance with FOIA Exemptions 5 and 6.  On June 18, 2025, you appealed that response.  Your appeal concerns what you believe to be inaccurate redactions, inaccurate application of FOIA exemption codes, and the omission of certain requested documents.

After thoroughly reviewing all the documentation that you submitted and the FOIA Office's case files, we determined that the FOIA Office did not accurately process your FOIA request.  To protect your due process rights, we have remanded your case to the FOIA Office for further processing.

---

Lesley Pacey
Page 2 of 2

You will have the opportunity to appeal once the FOIA Office completes its review and responds to you regarding the remand if you believe the resulting response is incorrect.

Sincerely,

JOHN WELCH

Digitally signed by
JOHN WELCH
Date: 2025.07.23
12:13:40 -07'00'

John W. Welch
Director
Appeals and Litigation Division

---

**Exhibit 6**

![USDA United States Department of Agriculture]

July 23, 2025

Mrs. LesleyPacey
Government Accountability Project
1612 K. St. NW, Suite 1100
WashingtonDC20006

SUBJECT:   Request 2025-FPAC-BC-07351-F - Pacey - Final Response

Dear Mrs.Pacey

This responds to your Freedom of Information Act (FOIA) request dated May 28, 2025 and assigned control number 2025-FPAC-BC-07351-F. The request was remanded back to the FOIA Team to re-evaluate the records after you submitted your appeal.

In response to your request, and as part of the remand, we compiled and are releasing 81 pages. With respect to these pages, we are releasing 43 pages in full, 38 pages redacted in part and zero pages withheld in full, pursuant to 5 U.S.C. § 552, exemption (b)(5), Deliberative Process Privilege, and (b)(6) of the FOIA.

**Exemption 5**  protects privileged interagency or intra-agency memoranda or letters, as follows:

Specifically, exemption 5 allows FSA to withhold, "inter-agency or intra-agency memorandums or letters which would not be available by law to a party... in litigation with an agency". As such, the privilege "exempts those documents... normally privileged in the civil discovery context". National Labor Relations Bd. v. Sears Roebuck & Co., 421 U.S. 132 (1975). Exemption 5 incorporates several of these privileges from discovery in litigation, including the deliberative process privilege, the attorney work-product privilege, the attorney-client privilege, and the Government commercial information privilege

**• Deliberative Process Privilege**
The Deliberative Process Privilege protects the decision-making process of Government agencies and encourages the frank discussion of legal and policy issues by ensuring that agencies are not forced to operate in a fish bowl. The deliberative process privilege protects materials that are both pre-decisional and deliberative. A pre-decisional document is a document prepared to assist an FSA decision-maker in arriving at his/her decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the personal opinions of the writer rather than FSA policy. The records withheld under this privilege include deliberative notes from meetings participated in by various state and federal agencies. Any notes, comments or information provided by agencies other than NRCS or FSA are not under our purview. We also tried to release as much of the desktop audit performed by NRCS as we could. This document was used for internal purposes only, though as you will see some of the information can be found online by simply accessing online resources provided by the State of



Ohio and the Ohio DNR.

**Exemption 6** protects personal information affecting an individual's privacy.

Specifically, exemption 6 protects personnel, medical, and similar files, the disclosing which would constitute a clearly unwarranted invasion of personal privacy. The courts have held that the phrase "similar files" involves all information that applies to a particular person. When disclosing information about particular individuals is requested, the courts have decided that it is necessary for FSA to determine whether release of the information would constitute a clearly "unwarranted" invasion of the individuals' privacy. To make this determination, FSA is required to perform a "balancing test". This means that FSA must weigh the individual's right to privacy against the public's right to disclosure. In this instance, FSA has determined that disclosing this information would shed little or no light on the performance of FSA's statutory duties and that, on balance; the public interest to be served by its disclosure does not outweigh the privacy interest of the individuals in question, in withholding it. The records withheld under this exemption include cell phone numbers and names of individuals not associated with FSA or NRCS.

If you believe our decision to withhold this information is incorrect, you may appeal to the FPAC Appeals and litigation Division (ALD). The Appeals and Litigation Staff must receive your written appeal within ninety (90) calendar days of the date of this letter. Please include in the appeal the location of the responsive records, if it is known to you, and the reason why you believe that there are records responsive to your request in FSA/NRCS files. Be sure to include a copy of your initial request letter in your appeal package. You may submit your appeal electronically to **FSAFOIAappeal@wdc.usda.gov** or by mail. If mailing the appeal, clearly mark both your letter and its envelope with the words "Freedom of Information Act Appeal." Mail your appeal package to the following address.

> FARM PRODUCTION AND CONSERVATION BUSINESS CENTER
> ATTN: APPEALS AND LITIGATION STAFF
> 1400 INDEPENDENCE AVE SW RM 5971-S
> WASHINGTON DC 20250-0570.
> PHONE: (202) 690-3297

You may seek dispute resolution services from the FOIA liaison. Contact information for the FOIA liaison is:

> FPAC – BC PUBLIC AFFAIRS LIAISON
> EMAIL: SM.FP.FOIA@USDA.GOV

You may contact the Office of Government Information Services at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. Contact



**United States
Department of
Agriculture**

information for the Office of Government Services is:

> OFFICE OF GOVERNMENT INFORMATION SERVICES
> NATIONAL ARCHIVES AND RECORDS ADMINISTRATION
> 8601 ADELPHI ROAD-OGIS
> COLLEGE PARK, MARYLAND 20740-6001
> PHONE: (202) 741-5770
> TOLL FREE:  (877) 684-6448
> FAX: (202) 741-5769
> EMAIL:  ogis@nara.gov

Contacting the FOIA liaison or the Office of Government Information Services does not affect your right to administratively appeal to ALD.

Request 2025-FPAC-BC-07351-F is officially closed.

If you have questions concerning this request, contact me at patrick.mcloughlin@usda.gov.  We can also be reached at the group email address SM.FP.FOIA@usda.gov.


Sincerely,

Patrick McLoughlin

Patrick McLoughlin
FOIA Officer
Farm Production and Conservation


cc:
Responsive Records

**Exhibit 7**

GOVERNMENT
ACCOUNTABILITY
PROJECT

1612 K Street NW Suite 808
Washington, DC, 20006

whistleblower.org

**Lesley Pacey**
Senior Environmental Officer
Government Accountability Project
1612 K Street NW, Suite 1100
Washington, DC 20006
        tleblower.org

July 25, 2025

**FPAC – Appeals and Litigation Division**
Farm Production and Conservation Business Center
ATTN: Appeals and Litigation Staff
1400 Independence Ave SW, Room 5971-S
Washington, DC 20250-0570
Email: FSAFOIAappeal@wdc.usda.gov

## Re: FOIA Appeal – Request Number 2025-FPAC-BC-07351-F

To Whom It May Concern,

Pursuant to the Freedom of Information Act (5 U.S.C. § 552), I hereby submit this administrative appeal of the USDA's final response dated July 23, 2025, concerning FOIA Request No. 2025-FPAC-BC-07351-F. I respectfully challenge the application of FOIA Exemptions (b)(5) and (b)(6) to the 38 partially redacted pages and request further review and release of all reasonably segregable, non-exempt information.

## Grounds for Appeal

### 1. Overbroad Application of Exemption 5 – Deliberative Process Privilege

The agency has invoked Exemption 5 to withhold portions of records described as "deliberative notes from meetings" and "internal desktop audits." However, the deliberative process privilege applies only to documents that are both **predecisional** and **deliberative**, and does **not** protect purely factual materials or final agency positions.

- The desktop audit, as referenced in your letter, appears to include factual summaries derived from state or federal data. If the same information "can be found online," it should not be withheld under FOIA.
- Any factual data or summaries used in decision-making are **not shielded** under Exemption 5 per *EPA v. Mink*, 410 U.S. 73 (1973), and *Coastal States Gas Corp. v.*



1612 K Street NW Suite 808
Washington, DC, 20006

whistleblower.org

*DOE*, 617 F.2d 854 (D.C. Cir. 1980).

- Furthermore, if these documents reflect the final analysis or adopted policy of NRCS or FSA, they are no longer predecisional and should be disclosed in full.

I therefore request that you conduct a line-by-line review of the 38 partially redacted documents to determine if factual portions can be reasonably segregated and released.

## 2. Improper Withholding under Exemption 6 – Personal Privacy

The redactions under Exemption 6 appear to include names and contact details of individuals from other government agencies or individuals communicating on official matters with federal employees.

- FOIA Exemption 6 applies only when disclosure "would constitute a clearly unwarranted invasion of personal privacy." *Department of State v. Washington Post Co.*, 456 U.S. 595 (1982).
- The public interest in understanding how federal and state agencies are responding to environmental and public health concerns **outweighs any minimal privacy interest** in withholding names of public officials acting in their official capacity.
- The names and roles of agency representatives engaging with USDA regarding matters of public concern—especially where federal funds or program enforcement are involved—should be disclosed in the interest of transparency and accountability.

## 3. Overriding Public Interest

This appeal is filed in the context of an ongoing environmental health investigation concerning potential mismanagement and misrepresentation of federal environmental and agricultural programs in impacted communities. The requested records may reveal improper agency conduct or regulatory failures—an area of heightened public interest.

Given the significant environmental and public health concerns involved, the Government Accountability Project asserts that the **public's right to know outweighs any interest in withholding internal deliberations that may mask wrongdoing, mismanagement, or undue industry influence**.

## Requested Remedy

- Conduct a new review of the 38 redacted documents.
- Release all **factual content** and final agency communications currently withheld under Exemption 5.
- Disclose the names and positions of **government employees and contractors**



1612 K Street NW Suite 808
Washington, DC, 20006

whistleblower.org

communicating in their official capacity.
- Provide a new Vaughn index or explanation of redactions, with itemized justification and analysis of segregability for each record.

Please confirm receipt of this appeal and provide an estimated timeline for determination. I am available to clarify or narrow the scope if needed to facilitate a faster review.

Thank you for your attention and commitment to transparency.

Sincerely,
**Lesley Pacey**
Senior Environmental Officer
Government Accountability Project

**Attachments:**

- Original FOIA request letter (May 28, 2025)
- FOIA Appeal Letter
- USDA FOIA final response letter (July 23, 2025)
- Relevant case citations and supporting argument references (upon request)



**USDA** Farm Production and Conservation
U.S. DEPARTMENT OF AGRICULTURE

**Exhibit 8**

Business Center
Appeals and Litigation Division
1400 Independence Avenue SW
Room 3243-S - Stop 0570
Washington, DC 20250-0501

*VIA ELECTRONIC MAIL*

Lesley Pacey
LesleyP@whistleblower.org

**ACKNOWLEDGMENT OF YOUR FREEDOM OF INFORMATION
ACT/PRIVACY ACT APPEAL**

Date Received:          July 25, 2025

Date of Appeal:         July 25, 2025

Log Number:             25 – 20 (Pertaining to Farm Service Agency documents)

This is an interim response to your recent Freedom of Information Act/Privacy Act appeal.  We received your appeal on the date noted above and assigned your appeal the log number indicated.  We will process your appeal and decide as quickly as possible in accordance with Federal Statutes and Departmental Regulations.  The actual processing time will depend upon the complexity of the appeal, the volume of responsive records, and any existing administrative backlog.

Thank you for your correspondence.  If you have any questions or wish to check on the status of your appeal, please contact the Farm Production and Conservation's Appeals and Litigation Division by email at sandra.becker@usda.gov.

Sincerely,

# Jose R Gonzalez
Digitally signed by Jose R Gonzalez
Date: 2025.07.28 15:21:53 -04'00'

Jose R. Gonzalez
Team Lead
Freedom of Information Act/Privacy Act Appeals Staff
Appeals and Litigation Division

**Farm Production and Conservation — Business Center**
*USDA is an equal opportunity provider, employer, and lender.*



**USDA** Farm Production and Conservation
U.S. DEPARTMENT OF AGRICULTURE

**Exhibit 9**

Business Center
Appeals and Litigation Division
1400 Independence Avenue SW
Room 3243-S - Stop 0570
Washington, DC 20250-0501

*VIA ELECTRONIC MAIL*

Lesley Pacey
LesleyP@whistleblower.org

**ACKNOWLEDGMENT OF YOUR FREEDOM OF INFORMATION
ACT/PRIVACY ACT APPEAL**

Date Received:        July 25, 2025

Date of Appeal:       July 25, 2025

Log Number:           25 – 19 (Pertaining to Natural Resources Conservation Service documents)

This is an interim response to your recent Freedom of Information Act/Privacy Act appeal.  We received your appeal on the date noted above and assigned your appeal the log number indicated.  We will process your appeal and decide as quickly as possible in accordance with Federal Statutes and Departmental Regulations.  The actual processing time will depend upon the complexity of the appeal, the volume of responsive records, and any existing administrative backlog.

Thank you for your correspondence.  If you have any questions or wish to check on the status of your appeal, please contact the Farm Production and Conservation's Appeals and Litigation Division by email at sandra.becker@usda.gov.

Sincerely,

Jose R Gonzalez  Digitally signed by Jose R Gonzalez
Date: 2025.07.28 15:18:20 -04'00'

Jose R. Gonzalez
Team Lead
Freedom of Information Act/Privacy Act Appeals Staff
Appeals and Litigation Division

---

**Farm Production and Conservation — Business Center**
*USDA is an equal opportunity provider, employer, and lender.*

**USDA** Farm Service Agency
U.S. DEPARTMENT OF AGRICULTURE

# Exhibit 10

Farm Service Agency
Office of The Administrator
Stop Code 0501
1400 Independence Avenue S.W.
Washington, DC 20250-0501

Lesley Pacey
Senior Environmental Officer
Government Accountability Project
1612 K Street NW, Suite 1100
Washington, DC 20006

Sent via email to: lesleyp@whistleblower.org

RE:  Freedom of Information Act (FOIA) Appeal – Lesley Pacey - Log 25-20
FOIAXpress Appeal Number 2025-FPAC-FSA-00089-A

Dear Ms. Pacey:

This letter is the official response to your July 25, 2025, Freedom of Information Act (FOIA) appeal received by the Farm Production and Conservation's (FPAC) Appeals and Litigation Division (ALD). You appealed the July 23, 2025, decision (FOIA Request 2025-FPAC-BC-07351-F) of Patrick McLoughlin, FPAC FOIA Officer, to partially deny your May 28, 2025, request for records.

On May 28, 2025, you requested all records in USDA's possession, custody, or control from February 3, 2023, to the present, including, but not limited to, testing records and data, communications and coordination, decision-making records, public communications, internal deliberations and regulatory and enforcement actions pertaining to the Norfolk Southern train derailment in East Palestine, Ohio on February 3, 2023.

**FPAC's Response to FOIA Request Control No. 2025-FPAC-BC-07351-F**

On July 23, 2025, the FPAC FOIA Officer provided you with a final response letter to your FOIA request.  Regarding your request, FPAC released 81 pages, with 68 of those pages originating from the Natural Resources Conservation Service (NRCS) and 13 pages originating from the Farm Service Agency (FSA).  Of the 68 pages of NRCS documents, the FOIA Office released 43 pages in full and released the remaining 25 pages with redactions.  Of the 13 pages that originated from FSA, the FOIA Office released all 13 pages with redactions.  The FPAC FOIA Office withheld the redacted information in accordance with FOIA, 5 U.S.C. § 552, Exemptions 5 and 6.

Because Mr. McLoughlin's response contained records from both NRCS and FSA, and because ALD evaluates each agency's documents independently during the appeal process, this letter concerns only those documents that originated from FSA.  ALD will evaluate the documents originating in NRCS in a separate response.

Lesley Pacey
Page 2 of 5

Exemption 5 permits withholding information under the deliberative process privilege, including pre-decisional documents or information that FPAC could withhold under civil discovery, attorney-client, or attorney work product privileges.

Exemption 6 protects information about individuals in "personnel and medical files and similar files" when disclosing such information "would constitute a clearly unwarranted invasion of personal privacy."

**Your July 25, 2025, Appeal of FPAC's Response to FOIA Request Control No. 2025-FPAC-BC-07351-F**

In your appeal dated July 25, 2025, you stated your concerns as follows:

"I respectfully challenge the application of FOIA Exemptions (b)(5) and (b)(6) to the 38 partially redacted pages and request further review and release of all reasonably segregable, non-exempt information."

You state your grounds for appeal as two-fold: an overbroad application of exemption 5 and improper withholding under exemption 6.  Your appeal asserts:

> **"Overbroad Application of Exemption 5 – Deliberative Process Privilege**
>
> The agency has invoked Exemption 5 to withhold portions of records described as "deliberative notes from meetings" and "internal desktop audits."  However, the deliberative process privilege applies only to documents that are both pre-decisional and deliberative and does not protect purely factual materials or final agency positions.
>
> - The desktop audit, as referenced in your letter, appears to include factual summaries derived from state or federal data.  If the same information "can be found online," it should not be withheld under FOIA.
>
> - Any factual data or summaries used in decision-making are not shielded under Exemption 5 per *EPA v. Mink*, 410 U.S. 73 (1973), and *Coastal States Gas Corp. v. DOE*, 617 F.2d 854 (D.C. Cir. 1980).
>
> - Furthermore, if these documents reflect the final analysis or adopted policy of NRCS or FSA, they are no longer pre-decisional and should be disclosed in full.
>
> I therefore request that you conduct a line-by-line review of the 38 partially redacted documents to determine if factual portions can be reasonably segregated and released.
>
> **Improper Withholding under Exemption 6 – Personal Privacy**
>
> The redactions under Exemption 6 appear to include names and contact details of individuals from other government agencies or individuals communicating on official matters with federal employees.

**USDA Farm Service Agency**
*USDA is an equal opportunity provider, employer, and lender.*

Lesley Pacey
Page 3 of 5

- FOIA Exemption 6 applies only when disclosure "would constitute a clearly unwarranted invasion of personal privacy." *Department of State v. Washington Post Co.*, 456 U.S. 595 (1982).

- The public interest in understanding how federal and state agencies is responding to environmental and public health concerns outweighs any minimal privacy interest in withholding names of public officials acting in their official capacity.

- The names and roles of agency representatives engaging with USDA regarding matters of public concern-especially where federal funds or program enforcement are involved-should be disclosed in the interest of transparency and accountability."

**FSA's Response to your July 25, 20245 FOIA Appeal**

**A.  FSA's Review of the Information Redacted from FOIA Request No. 2025-FPAC-BC-07351-F**

FPAC's ALD independently reevaluates previous FOIA request determinations and applies applicable FOIA exemptions during the FOIA appeal review process.  After a thorough review of the 13 pages containing redactions, FSA has determined that additional information previously redacted pursuant to Exemption 5 and 6 is releasable.  FSA saw no foreseeable harm in releasing the information.  However, FSA will continue to withhold some information pursuant to Exemptions 5 and 6.  The new set of FSA records still consists of 13 pages released in part, but now we are releasing more information on all pages.

The following FOIA Exemptions are relevant to the responsive records mentioned above:

   **i.       Information Exempt from Disclosure Pursuant to Exemption 5**

Exemption 5, 5 U.S.C. § 552(b)(5) permits the Government to withhold information under the deliberative process privilege, including inter and intra-agency communications which would not be available by law to a party other than an agency in litigation with the agency.  The courts have construed this to exempt documents that are normally privileged in the civil discovery context.  As a threshold matter, the responsive records must be inter-agency or intra-agency documents for the exemption to apply.

Certain information contained in the responsive records pertains to individual opinions, ideas and suggestions and/ or projections.  One privilege incorporated into Exemption 5 is the deliberative process privilege, which protects the quality of agency decision-making by safeguarding pre-decisional and deliberative information.  Specifically, three policy purposes consistently have been held to constitute the bases for this privilege; (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are actually adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not ultimately the grounds for any agency's action.

ALD determined that the FOIA Office did not wholly appropriately apply redactions following the principles delineated by the "deliberative process privilege."  The deliberative process privilege protects

Lesley Pacey
Page 4 of 5

the "decision-making process of Government agencies." The provision protects not only documents but also the integrity of the deliberative process itself, where the exposure of that process would result in harm. Under Exemption 5, FSA will continue to withhold information such as individual opinions, ideas, suggestions and/ or projections that do not state facts and are not indicative of any items adopted as fact, final analysis or adopted policy by FSA. Disclosure of the agency's internal discussions could reasonably be expected to chill or discourage candor in discussions and temper the free flow of ideas and open communication exchanges. However, FSA will now release additional pages/passages previously withheld under Exemption 5. This information includes statements made by FSA personnel. However, statements from employees outside of FSA are beyond the purview of FSA and FSA has no authority to release such information. In addition, FSA is no longer withholding the names of the other agencies and their employees. You have the option to exercise your rights to query those agencies directly for information owned by them.

### ii.    Information Exempt from Disclosure Pursuant to Exemption 6

Exemption 6, 5 U.S.C. § 552(b)(6), permits the Government to withhold "personnel and medical files and similar files" containing information about individuals when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." We have determined that these records meet the definition of "similar" files because they contain information about individuals.

To determine whether an agency may withhold a document under Exemption 6, it must undertake a three-step analysis. First, the agency must determine whether the record disclosure would comprise a significant privacy interest. Second, the agency must determine whether the release of the document would further the public interest by shedding light on the operations and activities of the Government. Third, the agency must balance the identified privacy interests against the public interest in disclosure.

Pursuant to Exemption 6, FSA is withholding producer names, personal email addresses and phone numbers. Releasing this information would not reveal anything about Government activities; therefore, the privacy interests of the individuals outweigh the public interest.

**Conclusion**

Ultimately, FSA grants your appeal in part and denies it in part. This decision is the final administrative determination on your FOIA appeal. You have the right to seek judicial review of this decision in an appropriate U.S. District Court pursuant to 5 U.S.C. § 552(a)(4)(B).

Prior to seeking judicial review, and as a non-exclusive alternative to litigation, you may contact the Office of Government Information Services (OGIS). The Open Government Act of 2007 amended the FOIA and created OGIS within the National Archives and Records Administration. OGIS provides mediation of FOIA disputes between appellants and Federal agencies.

Lesley Pacey
Page 5 of 5

Participation in mediation does not affect your right to judicial review.  You can find contact information for OGIS at http://www.archives.gov/ogis.

Sincerely,

William Beam
Administrator
Farm Service Agency

Enclosure